UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                                :
BRANDON N. BRYANT,                              :
                                                :   CASE NO. 1:12-CV-2122
          Plaintiff,                       :
                                                :
vs.                                             :   OPINION & ORDER
                                                :   [Resolving Doc. No. 1, 18, 19]
COMMISSIONER OF SOCIAL                          :
SECURITY ADMINISTRATION,                        :
                                                :
          Defendant.                       :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Magistrate Judge George J. Limbert recommends this Court affirm the Social Security Commissioner's denial of supplemental security income to Plaintiff Brandon N. Bryant.[1] Because substantial evidence supported the Administrative Law Judge's (ALJ's) conclusions and the ALJ did not abuse her discretion, the Court **ADOPTS** the recommendations of the Magistrate Judge and **AFFIRMS** the Commissioner's denial of benefits.

### I. Factual and Procedural Background[2]

On April 8, 2008, Plaintiff Brandon Bryant filed an application for supplemental security income.[3] After his application was denied, Bryant requested a hearing.[4] On November 30, 2010, Bryant appeared at a hearing with counsel before Administrative Law Judge Penny Loucas; a neutral vocational expert also attended and testified.[5]

Plaintiff testified that he injured his hand when he accidentally put it through a window while

---

[1] Doc. 18.
[2] The Court recites the facts that are relevant to Plaintiff's objections to the Report and Recommendation.
[3] Doc. 12 at 45.
[4] *Id.* at 104.
[5] *Id.* at 45.

Case No. 1:12-cv-2122
Gwin, J.

working for his father.[6] As a result, his hand stiffened and closed.[7] Bryant had surgery on his hand and occasionally attended physical therapy.[8] Plaintiff also testified about his criminal history and that he had obsessive traits.[9]

During the hearing, the ALJ and Bryant's counsel also questioned the vocational expert. The ALJ asked what jobs a person limited to unskilled work and with only occasional use of his dominant hand could perform.[10] The vocational expert answered that such a person could serve as a flagger, an usher, or a parking lot attendant.[11] The vocational expert said that all those jobs required only a one- or two-step reasoning level.[12] The Dictionary of Occupational Titles defines each position as requiring a GED reasoning level of 2.[13] The vocational expert also said that those jobs could be performed by a person who could only use his dominant hand to guide objects.[14]

Several consultants also gave opinions. Four consultants offered opinions on Bryant's use of his hand: two consultants said that he had occasional use of his hand, and two said he had no use at all.[15] The ALJ also had records or opinions from eight consultants concerning Bryant's mental abilities.[16] Medical records also stated that Plaintiff had actually injured his hand by breaking a glass window to enter his house when he was locked out.[17]

---

[6] *Id.* at 56-57.
[7] *Id.* at 59.
[8] *Id.* at 57-58.
[9] *Id.* at 48-56, 62-64.
[10] *Id.* at 71.
[11] *id.* at 71-72.
[12] *Id.* at 76.
[13] *Id.* at 81-82.
[14] *Id.* at 74-75.
[15] *Id.* at 27-29.
[16] *Id.* at 29-35.
[17] *Id.* at 325.

Case No. 1:12-cv-2122
Gwin, J.

On December 22, 2010, the ALJ denied Bryant's applications.[18] Although the ALJ gave significant weight to the opinions of two state medical examiners who found Bryant could only perform one- or two-step routines, the ALJ did not include that limitation in her finding of Bryant's residual functional capacity.[19] The ALJ found that Plaintiff had occasional use of his right hand.[20] The ALJ found his other symptoms to be not credible to the extent that the symptoms were not consistent with that residual functional capacity.[21] The ALJ also found that because Bryant could act as a flagger, usher, or parking lot attendant, he was not disabled and entitled to supplemental security income.[22]

Bryant appealed the ALJ's decision to the Appeals Council of the Social Security Administration,[23] which denied his request for review on June 19, 2012.[24] On August 7, 2012, Bryant sought review in this Court.[25] On September 3, 2013, Magistrate Judge Limbert issued a Report and Recommendation that the Court affirm the Commissioner's decision.[26] Bryant timely filed objections to the Report and Recommendation, which the Court now reviews.[27]

## II. Legal Standard

---

[18] *Id.* at 17.
[19] *Id.* at 35.
[20] *Id.* at 23.
[21] *Id.* at 24.
[22] *Id.* at 36-37.
[23] *Id.* at 14.
[24] *Id.* at 1.
[25] Doc. 1.
[26] Doc. 18.
[27] Doc. 19. Plaintiff filed his objections seventeen days after Magistrate Judge Limbert filed his Report and Recommendation on the electronic docket. *Id.* Although this district's local rules require objections to be filed within fourteen days of service of a magistrate's Report and Recommendation, Local R. 72.3(b), Federal Rule of Civil Procedure 6(d) allows for three extra days if service is done by "sending it by electronic means," Fed. R. Civ. P. 5(b)(2)(E), 6(d). Therefore, the objections were timely filed. *Cf. United States v. Lee*, 862 F. Supp. 2d 560, 563-64 (E.D. Ky. 2012) (interpreting the interplay between Fed. R. Civ. P. 5(b)(2)(E) and Fed. R. Crim. P. 45©, governing objections to magistrates' Reports and Recommendations in criminal cases).

Case No. 1:12-cv-2122
Gwin, J.

To establish disability under the Social Security Act, a claimant must show that she is unable to engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[28] Agency regulations establish a five-step sequential evaluation to determine whether a claimant is disabled.[29] The claimant's impairment must prevent her from doing her previous work, as well as any other work existing in significant numbers in the national economy.[30]

The Federal Magistrates Act requires a district court to conduct a *de novo* review of the claimant's objections to a report and recommendation.[31] A final decision of the Social Security Commissioner made by an ALJ is, however, not reviewed *de novo*. A district court only determines whether the ALJ's decision is "supported by substantial evidence and was made pursuant to proper legal standards."[32]

Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion."[33] The substantial evidence standard requires more than a scintilla, but less than a preponderance of the evidence.[34] In deciding whether substantial evidence supports the ALJ's decision, a court should not try to resolve conflicts in evidence or decide questions of credibility.[35] The district court may look into any evidence in the record, regardless of whether it has been cited

---

[28] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).
[29] 20 C.F.R. §§ 404.1520, 416.920.
[30] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
[31] 28 U.S.C. § 636(b)(1).
[32] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).
[33] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).
[34] *See id.*
[35] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

Case No. 1:12-cv-2122
Gwin, J.

by the ALJ.[36] When substantial evidence supports the ALJ's decision, a court may not reverse, even if the court would have made a decision different than the one the ALJ made.[37]

### III. Analysis

Plaintiff Bryant makes six objections to Magistrate Judge Limbert's Report and Recommendation.[38] First, Plaintiff says that the ALJ erred by failing to include Plaintiff's one- or two-step reasoning limitation in his residual functional capacity and that the error is not harmless.[39] Second, Bryant says the ALJ erred by concluding that Bryant could use his dominant right hand for one-third of the workday and by finding that Bryant could perform certain jobs despite having very little use of his hand.[40] Third, Bryant says that the ALJ erred by not asking about inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles.[41] Fourth, Plaintiff says the ALJ erred in finding he could not perform the jobs the ALJ cited because the vocational expert's testimony was too qualified to be relied on.[42] Fifth, Plaintiff says that the ALJ committed procedural errors by using the wrong legal standard and using evidence outside of the record.[43] And finally, Plaintiff says that the ALJ's credibility determination was not supported by substantial evidence.[44]

Plaintiff's objections fail.

**A.  Failure to Include Mental Limitation in Residual Functional Capacity**

---

[36]*Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).
[37]*Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).
[38]Doc. 19.
[39]*Id.* at 2-5.
[40]*Id.* at 5-6.
[41]*Id.* at 7.
[42]*Id.* at 7-8.
[43]*Id.* at 8-10.
[44]*Id.* at 10.

Case No. 1:12-cv-2122
Gwin, J.

Plaintiff says that the ALJ gave significant weight to two non-examining psychologists' determination that Plaintiff should be limited to jobs with only one- or two-step reasoning.[45] But the ALJ did not include that limitation in Plaintiff's residual functional capacity.[46] Bryant says that this failure is reversible error.[47] Bryant says that the ALJ did not properly consider the limitation because the ALJ based her decision on ambiguous or equivocal testimony from the vocational expert and the ALJ did not resolve the ambiguity.[48]

Magistrate Judge Limbert's Report and Recommendation recommends that the Court find that the ALJ did consider the limitation even though the limitation was not in the residual functional capacity.[49] "[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless 'the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.'"[50] If the ALJ actually and properly considered the limitation the ALJ credited in deciding what jobs Bryant could perform, then the error would be harmless.

First, the vocational expert's testimony was not ambiguous or equivocal. Plaintiff's argument that the phrase "I don't believe [the job requires] any more than one or two steps"[51] implies ambiguity or equivocation loses. In *Graves v. Secretary of Health, Education, & Welfare*, the expert had qualified his testimony by saying there was not a substantial number of jobs in the economy for the claimant, that employers would be hesitant to hire the claimant, and that he did not

---

[45] *Id.* at 2.
[46] *Id.*
[47] *Id.* at 2-3.
[48] Doc. 19 at 2-3.
[49] Doc. 18 at 13.
[50] *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)).
[51] Doc. 12 at 78.

-6-

Case No. 1:12-cv-2122
Gwin, J.

know how to assign weight to the claimant's pain.[52] At one point, the vocational expert even said, "A finding to the opposite might well be found."[53] These ambiguous and qualified statements are not the same as the vocational expert in this case using a colloquial verbal crutch of "I don't believe" to summarize his prior description of the job requirements of a flagger.

Second, the vocational expert adequately explained why he thought the jobs he named could be performed by a person with a one- or two-step reasoning limitation. The ALJ asked the vocational expert whether or not there are jobs that only require a one- or two-step reasoning limitation but that are listed has having a higher reasoning level.[54] The vocational expert answered that the jobs he had named generally can be performed by a person with a one- or two-step reasoning limitation.[55] In response to a question from Plaintiff's counsel, the vocational expert also stated that the jobs he named only "require[d] one and two-step direction."[56] The fact that the jobs are listed in the Dictionary of Occupational Titles as requiring more than a one- or two-step reasoning limitation is not important because "the ALJ and consulting vocational expert are not bound by the Dictionary in making disability determinations."[57] The vocational expert may explain that a person with a more limited capacity can perform a job that the Dictionary lists as requiring more capacity because the Dictionary provides maximum job requirements.[58] Here, the vocational expert appropriately explained how the jobs' normal reasoning requirements are less than the Dictionary's maximum reasoning level.

---

[52] 473 F.2d 807, 809-10 (6th Cir. 1973).
[53] *Id.* at 810.
[54] Doc. 12 at 78.
[55] *Id.*
[56] *Id.* at 76.
[57] *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003).
[58] SSR 00-4p, 2000 WL 1898704, at *3 (2000).

Case No. 1:12-cv-2122
Gwin, J.

And third, the ALJ relied on the vocational expert's testimony concerning jobs with one- or two-step reasoning limitations in determining that there were jobs in the economy Bryant could perform. The jobs that the ALJ listed in her decision are the same jobs the vocational expert named.[59] Because the ALJ actually and properly considered the limitation the ALJ should have included in Bryant's residual functional capacity, the error is harmless. The Court, therefore, overrules this objection.

**B.     Use of Dominant Hand for One-Third of Workday**

Plaintiff Bryant says that there is not substantial evidence that Bryant could use his right hand for one-third of the workday and that the error is not harmless because the jobs could not reasonably be performed by a person who could only use one hand.[60]

The ALJ discussed the varying opinion evidence concerning Bryant's use of his right hand in detail.[61] The ALJ gave significant weight to the opinions of two advising consultants who said that Bryant had occasional use of his right hand because they were familiar with Social Security Administration policy and regulations and because their opinions appeared to be assessments of the medical evidence as a whole rather than Bryant's descriptions of his limitations.[62] The ALJ discounted the opinion of Bryant's family physician that Bryant had no use of his hand because of their long-standing relationship and an inconsistency with other medical evidence.[63] Finally, the ALJ gave some weight to the opinion of Dr. Lai, who also thought Bryant had no use of his hand.[64]

---

[59] Doc. 12 at 36-37, 71-72.
[60] Doc. 19 at 5-6.
[61] Doc. 12 at 27-29.
[62] *Id.* at 27-28.
[63] *Id.* at 28.
[64] *Id.* at 29.

Case No. 1:12-cv-2122
Gwin, J.

But the ALJ noted that Dr. Lai's opinion was inconsistent with Dr. Lai's observation that Bryant could use his hand as a guide.[65/] The ALJ found the opinion testimony supported her residual functional capacity finding.[66/] The ALJ considered and weighed all of the opinion testimony on this issue and came to a reasonable conclusion. Therefore, substantial evidence supports the ALJ's residual functional capacity finding, and the Court overrules this objection.

**C.    Inquiring into Conflicts with the Dictionary**

Plaintiff says that the ALJ erred by not inquiring why the vocational expert's testimony conflicted with the Dictionary of Occupational Titles.[67/]  He says that Social Security Ruling 00-4p requires the ALJ to do.[68/]

Under Social Security Ruling 00-4p, once an ALJ has recognized a conflict between the testimony of a vocational expert and the Dictionary of Occupational Titles, the ALJ must "explain in the determination or decision how he or she resolved the conflict" before relying on the vocational expert's testimony.[69/] The ALJ also has the obligation to ask whether a vocational expert's opinion on job requirements is consistent with the Dictionary.[70/]

The ALJ found that there was no discrepancy between the vocational expert's testimony and the Dictionary.[71/] Even if this were wrong, however, the error would be harmless. The ALJ received an adequate explanation for any discrepancy between the vocational expert's testimony and the Dictionary.  The ALJ specifically asked whether a person with a one- or two-step reasoning

---

[65/]*Id.*
[66/]*Id.*
[67/]Doc. 19 at 7.
[68/]*Id.*
[69/]2000 WL 1898704, at *4 (2000).
[70/]*Id.*
[71/]Doc. 12 at 37.

-9-

Case No. 1:12-cv-2122
Gwin, J.

limitation could perform a job with a higher reasoning level, and the vocational expert answered that it was possible and provided the flagger and usher positions as an example.[72/] The fact that the vocational expert said that his opinion in part "has nothing to do with the DOT"[73/] does not mean there was a conflict between his testimony and the Dictionary; the actual text of the Dictionary determines whether there is a conflict. Accordingly, the Court overrules this objection.

**D.    One-Armed Work**

Plaintiff says that he could not perform the jobs the ALJ named because they require using two arms.[74/] Plaintiff also says that the ALJ could not rely on the vocational expert's testimony to find that Bryant could perform those jobs.[75/]

Substantial evidence in the record supports the ALJ's determination that Bryant could perform the jobs the ALJ listed. The ALJ relied on the testimony of the vocational expert who said that the job duties could be performed by a person with full use of one arm and limited use of the dominant hand for occasional periods, such as to guide things.[76/] The expert's use of the words "essential duties" and "it would just take you a little bit longer"[77/] are not qualified in the same way that the expert's testimony was qualified in *Graves*. Accordingly, the Court overrules this objection.

**E.    Procedural Errors**

Plaintiff Bryant says that the ALJ used the wrong standard of proof and that the ALJ used

---

[72/]*Id.* at 78. Although the ALJ used the term SVP, or specific vocational preparation, instead of GED reasoning, it is apparent based on the context that the ALJ, Bryant's counsel, and the vocational expert all had confused the two terms and meant GED reasoning. *Id.* at 77-79.

[73/]*Id.* at 75.
[74/]Doc. 19 at 7.
[75/]*Id.*
[76/]Doc. 12 at 74-75.
[77/]Doc. 19 at 8 (citing vocational expert's testimony).

-10-

Case No. 1:12-cv-2122
Gwin, J.

irrelevant and extra-record evidence.[78] Before assessing and weighing the medical evidence, the ALJ stated, "If supported by substantial evidence, the ALJ's findings of fact are conclusive, even if the record could arguably support a different result."[79] The ALJ then defined the substantial evidence standard.[80] Plaintiff also cites provisions of the Commissioner's Hearings, Appeals and Litigation Law Manual ("HALLEX") to support his claim that extra-record evidence was improperly considered.[81]

First, the Court agrees with the Magistrate Judge that the ALJ was referring to judicial review of the ALJ's decision, not the legal standard the ALJ was using.[82] Although the courts are aware of the proper standard, a claimant may be unaware of how the ALJ's decision will be reviewed. Moreover, the ALJ repeatedly stated that she was "find[ing]" facts, implying the use of a preponderance standard at the very least, even if the ALJ never specified it was a preponderance standard.[83]

Second, the evidence of Bryant's prior criminal history is relevant to Bryant's credibility, even though it was not specifically cited by the ALJ, as explained below. "There is little dissent from the general proposition that at least some crimes are relevant to credibility."[84] At least some of Bryant's crimes are relevant to the ALJ's credibility decision.

And third, the ALJ's citation to the Diagnostic and Statistical Manual of Mental Disorders

---

[78]Doc. 19 at 8-10.
[79]Doc. 12 at 25 (quotation omitted).
[80]*Id.*
[81]Doc. 19 at 9.
[82]Doc. 18 at 16.
[83]*See, e.g.*, Doc. 12 at 23.
[84]Fed. R. Evid. 609 advisory committee's note (1972).

-11-

Case No. 1:12-cv-2122
Gwin, J.

is not reversible error. The HALLEX provisions cited by Plaintiff are not the kind of binding regulation that can require a reversal on judicial review.[85/] Even giving 42 U.S.C. § 405(b)(1) the interpretation that Plaintiff wishes, the ALJ based her decision on evidenced "adduced at the hearing";[86/] the citation to the manual merely provided an explanation for how the ALJ assigned weight to an opinion. Additionally, the inclusion of the manual did not deprive Plaintiff of due process in the decision-making process. Therefore, the Court overrules this objection.

**F.     Credibility**

Plaintiff says that the ALJ did not cite the factors listed in agency rules for determining a claimant's credibility and that the ALJ did not consider the evidence cited by Magistrate Judge Limbert to support the adverse credibility determination.[87/]

First, the ALJ did cite her obligations under Social Security Ruling 96-7p to consider whether the claimed symptoms were consistent with the objective medical evidence and other evidence.[88/] Therefore, the ALJ did not abuse her discretion.

Second, although the ALJ did not specifically refer to the evidence Magistrate Judge Limbert mentions, the ALJ did not need to. "[A]n ALJ is not required to discuss all the evidence submitted,

---

[85/]*Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008) (HALLEX is "not binding on this court" although it can be persuasive).

[86/]42 U.S.C. § 405(b)(1).

[87/]Doc. 19 at 10.

[88/]Doc. 12 at 23 ("In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of . . . [SSR] 96-7p."). SSR 96-7p, 1996 WL 374186, states, "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* at *1.

Case No. 1:12-cv-2122
Gwin, J.

and an ALJ's failure to cite specific evidence does not indicate that it was not considered."[89]

Third, there is substantial evidence to support the ALJ's credibility determination. The ALJ noted that Bryant gave vague answers that left the impression he was hiding something.[90] The ALJ also noted that medical evidence contradicted Bryant's claim that he had obsessive compulsive disorder.[91] And the ALJ noted that Bryant's work history diminished the persuasiveness of Bryant's claims.[92] The evidence cited by the Magistrate Judge lends additional support to the ALJ's conclusion.[93] Accordingly, the Court overrules this objection as well.

### IV. Conclusion

The Court has reviewed the Magistrate Judge's other recommendations and finds them correct. For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of Magistrate Judge Limbert and **AFFIRMS** the Commissioner's denial of benefits.

IT IS SO ORDERED

Dated: September 25, 2013    s/    *James S. Gwin*
                             JAMES S. GWIN
                             UNITED STATES DISTRICT JUDGE

---

[89] *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Bryant's citation to *Pruidez v. Holder*, 632 F.3d 234 (6th Cir. 2011), for the proposition that the Court must review only the reasons given by the ALJ is irrelevant here. If the ALJ had found Bryant did not qualify for disability because he had substantial gainful employment, this Court could not affirm on a ground that the ALJ had not given, such as finding no disability. That is the *Pruidez* rule. But where the ALJ gives a reason and the only issue is whether the ALJ's reason makes sense given the facts in the record, the Court can affirm on the basis of facts the ALJ did not cite.

[90] Doc. 12 at 24-25.
[91] *Id.* at 25.
[92] *Id.*
[93] Doc. 18 at 16.